ANN FORD, AS ADMINISTRATRIX, ETC., OF OWEN FORD, DECEASED, RESPONDENT, v. JEREMIAH C. LYONS, APPELLANT.

*Negligence — duty of a master to protect an employee from injury while in the discharge of his duties.*

Upon the trial of this action, brought by the plaintiff to recover damages for the death of her intestate, which was alleged to have been occasioned by the negligence of the defendant, it appeared that the intestate, while working in the cellar of a building being erected by the defendant in the city of New York, in preparing mortar to be used by the bricklayers, was required to go to a tub of water in that portion of the cellar under the space left for the construction of the stairways. While near the tub the deceased was struck by something, but by what was not shown by any direct evidence, although the *post mortem* examination showed that his skull had been fractured by a blow upon the top of his head, and the facts proved were such as to warrant the jury in concluding that it was by some hard substance falling upon him from the top of the building. One witness testified that he heard a noise which he described as a kind of thud; that he looked up and saw the deceased stagger over towards the wall, and that he, the witness, caught the deceased just as he struck the tub. Evidence was also given tending to show that broken portions of brick did fall from the upper part of the building where the bricklayers were at

work, and that there was no safe or secure covering to protect persons who were required to resort to the tub in preparing mortar, while on the part of the defense evidence was given tending to prove that a complete and secure covering was placed and maintained in this part of the building.

*Held*, that the evidence was sufficient to sustain a verdict of the jury finding that the covering was defective, and that by reason of that fact the injury was received.

That there was evidence from which it could reasonably be concluded that the defendant had been careless and negligent, in not providing a proper covering for the protection of his men who were required to render services in this portion of the cellar of the building.

That the evidence was not such as necessarily to require a finding that the intestate was guilty of contributory negligence, or that he took this risk upon himself as a necessary incident of his employment.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Alex. Thain*, for the appellant.

*James P. Nieman*, for the respondent.

DANIELS, J.:

The intestate was injured by some substance falling upon his head while he was at work in the cellar of a building being erected on Monroe street, in the city of New York. He was preparing mortar to be used by the bricklayers, and in the performance of his duties was required to go to a tub of water in that portion of the cellar under the space left for the construction of the stairways. At the time of his injury the evidence tended to show that there were sixteen bricklayers at work on a scaffold in the fourth story, all laying brick. The deceased was near the tub at the time when he was struck, but by what he was struck was not shown by any direct evidence taken upon the trial. But the facts were such as to warrant the jury in concluding that it was by some hard substance falling upon him from the top of the building. One witness, who was also at work at the time in the cellar, stated that he heard a noise which he described as a kind of thud; that he looked up and saw the deceased stagger over towards the wall, and that he himself caught him as he just struck the tub and was falling into

it. And another witness, who was also present, observed him as he was stretched against the wash-tub. The *post mortem* examination disclosed the fact that he had been struck upon the top of his head, the blow producing a fracture at the base of the skull. It was not probable, as the evidence was given, that the deceased was injured in this manner either by coming in contact with the wall, or with the tub itself; but the decided probability was that he was struck by a substance falling from the upper part of the building upon his head as he was engaged in the rendition of the service required to be performed by him at the water-tub. The law does not require positive evidence to establish a fact of this description, but it may be inferred from circumstances with reasonable certainty indicating its existence, and those circumstances were made to appear upon the trial. It was further proved that broken portions of brick did fall from the upper part of the building, where the brick-layers were at work, and the probability was that it was by a sub-stance of this description, falling in this manner, that the deceased was injured, for both a heavy substance and a fall from a consider-able height would be requisite to produce this fracture of the skull.

It was proved upon the trial that the defendant had the contract for, and was constructing the brick-work of, the building. And evidence was given tending to establish the fact that above the tub, to which the men preparing the mortar were obliged to resort in the performance of their duties, there was no safe or secure cover-ing which would protect them from exposure to these falling pieces of brick. One of the witnesses testified that there was no cover-ing over the head where this man was at work; that there were a few barrels there, but that they did not fill the space so as to exclude falling substances from above. And the evidence of another wit-ness, sworn on behalf of the plaintiff, who was at work in the building, described the covering as having been made of barrels and boards. He was unable, however, to state whether open spaces existed in this covering, but he did not think that any were large enough for a brick or stone of the size mentioned to pass through. It was, however, made the subject of complaint in the building between some of the men and the foreman that the covering was not sufficient to protect the men who were working about the tub. On the part of the defense evidence was given tending to prove

that a complete and secure covering was placed and maintained in this part of the building. But this evidence was not entitled to be adopted as controlling over the jury, for the reason that it did not permit, as a possibility, the occurrence of the injury happening to the deceased. As the case was made to appear, there was no other probable cause from which he could have been injured in the manner in which he was, than by the falling of some hard substance upon his head from the upper portion of the building, and that could have only fallen upon him through an opening in the covering over the space where he was at work. The jury did, therefore, have evidence before them sustaining the probability of the statements made by the witness Hughes that the covering was defectively insufficient, and that this man received a mortal injury by reason of that fact. It was for the jury, as the evidence was given, to determine whether this was so or not, and their verdict, finding the existence of that fact, cannot be held to have been so conspicuously against the weight of the evidence as to either justify or require the court to set it aside.

Assuming the fact to have been, as it must have been, found by the jury before they could render the verdict which they did, then there was evidence from which it could reasonably be concluded that the defendant had been careless and negligent in not providing a proper covering for the protection of his men who were required to render services in this portion of the cellar of the building. For, as the law has been repeatedly affirmed, " as between servant and employer, the latter is bound to use reasonable care in the prosecution of the business in which he engages the former, and it cannot be made out upon principle, or from any case of authority, that he shall not be liable for damages arising from a failure to do so." (*Sheehan* v. *N. Y. C., etc., R. R. Co.*, 91 N. Y., 332, 334; *Pantzar* v. *Tilly Foster Iron Co.*, 99 id., 368.)

The failure of the defendant to provide a reasonably safe and secure covering for this space was negligence on his part, even though he may have intrusted the immediate performance of the duty to the foreman in charge of the work, for the employer cannot delegate such a duty, which is his own, to another and relieve himself from legal liability because of the carelessness or default of that other.

The evidence was not such as necessarily to attribute carelessness

to the intestate.   He was in the discharge of his duties, as that was required in the course of his employment.   It was part of his service he owed to his employer, and he was not required to assume that the latter would assign him to a dangerous place for the rendition of that service.   Neither was it made to appear that he was aware of the fact that the covering over this space was insufficient or insecure.   And as the evidence was presented the jury could very well conclude that he appeared to have been without fault contributing to the production of this injury.   And for these reasons it cannot be concluded that the deceased took this risk upon himself as a necessary incident of his employment.

The evidence which was made the subject of exception was not improperly received, but if it was, no legal harm was produced by it in the case, for it was entirely obvious without it, that if planks had been placed across the beams over the place where the deceased was at work, no substance could have fallen through from above that would have resulted in injury to him.   The charge was in all respects as favorable to the defendant as it could be claimed under the authorities, and as no error has been found either on the part of the jury or of the court, the judgment and the order should be affirmed.

BRADY, P. J., and MACOMBER, J., concurred.

Judgment and order affirmed.